

# Fourth Court of Appeals
## San Antonio, Texas

### DISSENTING OPINION

No. 04-14-00002-CR

Ray Lee **GARCIA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 12-03-0066-CRA
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Marialyn Barnard, Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  August 26, 2015

As the majority opinion states, "when faced with cases raising *McNeely* concerns, we have held the mandatory blood draw statute is the very type of categorical or per se rule rejected by the Supreme Court in *McNeely*."[1]  I agree that section 724.012(b) does not constitute a valid exception to the warrant requirement of the Fourth Amendment.  TEX. TRANSP. CODE ANN. § 724.012(b) (West 2011).  I also agree that this case does not present a circumstance permitting a warrantless blood draw based on exigent circumstances, and that Garcia's blood was illegally obtained.

---

[1] *Missouri v. McNeely*, __ U.S. __, 133 S. Ct. 1552 (2013).

However, I disagree with the majority's conclusion that because similar evidence—Garcia's medical records—was admitted without objection, any error in admitting the blood draw results ordered by the troopers was harmless "because the blood draws taken independently by hospital staff established Garcia was intoxicated."

The medical records relied on by the majority do not show Garcia's actual blood alcohol results, but contain only the lab result numbers from which blood alcohol results are calculated. The majority opinion footnotes our sister court in Amarillo, relying on its holding that admission of blood alcohol results obtained from a warrantless blood draw is not harmful when *blood alcohol results* based on blood draws authorized by the hospital for medical purposes are admitted into evidence. *See Baker v. State*, No. 07-14-00161-CR, 2015 WL 1518956, at *1 (Tex. App.—Amarillo March 31, 2015, no pet.) (per curiam, not designated for publication). In *Baker*, the Amarillo court of appeals assumed *arguendo* that the warrantless blood draw taken at the hospital at the direction of the trooper was inadmissible, and determined the error harmless after noting the trial court had also admitted "results of the blood draw taken for medical purposes [which] *illustrated* that [the appellant's] blood alcohol level was .278, a level far exceeding the legal limit." *Id.* (emphasis added). The medical records themselves, presumably, contained evidence of Baker's blood alcohol levels above the legal limit. Here, Garcia's medical records, standing alone, do not reveal his blood alcohol level. Garcia's medical records alone cannot support a guilty verdict for the offense charged. The State cannot satisfy its burden of proof in this case by simply obtaining by subpoena a defendant's hospital records which, independently, cannot support a guilty verdict.

*Baker* relies on *State v. Hardy*, then a case of first impression, in which the Court of Criminal Appeals analyzed the question of privacy in this context. *See State v. Hardy*, 963 S.W.2d

516, 527-30 (Tex. Crim. App. 1997). Because the issue of standing is not before us, I do not find it opportune here to analyze the question of privacy addressed in *Hardy*, although I concur with the dissent's analysis. I do, however, point out that the *Hardy* court determined whether the government's acquisition of a written report made by the hospital—which revealed evidence of blood drawn *and analyzed for blood alcohol content by hospital personnel*—infringed upon a societally-recognized expectation of privacy of one's medical records. *Id.* at 524. While the opinion precedes *McNeely* and its progeny*,* the court specifically declined to express an opinion as to "whether society recognizes a reasonable expectation of privacy in medical records in general." *Id.* at 527. The court further stated, "given the authorities discussed, whatever interests society may have in safeguarding the privacy of medical records, they are not sufficiently strong to require protection of *blood-alcohol test results from tests taken by hospital personnel* solely for medical purposes after a traffic accident." *Id.* (emphasis added). *Hardy* involved the hospital's own written report which provided a blood alcohol test result derived from blood drawn and analyzed by the hospital. *Id.* at 524, 527. We are not presented with the same facts here. A clear distinction is present between admissible hospital records that contain reliable blood alcohol test results derived from blood drawn and analyzed by hospital personnel, and records that do not.

*Baker* determined that the appellant lacked an expectation of privacy in the blood draw taken for medical purposes by hospital personnel after the accident, and "could not lawfully object to its use at trial," noting that it was "effectively admitted without legitimate objection or as if no objection was made." *Baker*, 2015 WL 1518956, at *1 (citing *Hardy*, 963 S.W.2d at 527). Here, the majority's analysis, while not specifically holding as much, suggests that a defendant cannot lawfully object on any grounds to the use of his or her medical records in a criminal trial. I emphatically decline to adopt the reasoning of the Amarillo court in *Baker*, and await further

review of this issue by the Court of Criminal Appeals in its review of *State v. Huse*, No. 07-12-00383-CR, 2014 WL 931265 (Tex. App.—Amarillo March 6, 2014, pet. granted) (mem. op., not designated for publication) (State utilized grand jury subpoena to obtain hospital records reflecting results of defendant's blood alcohol content at 0.219 and diagnosis of acute blood intoxication). *Huse* involved an appeal by the State from the trial court's order suppressing medical records in a DWI case. *Id.* at \*1. According to the Amarillo court, because there is no expectation of privacy in one's blood-alcohol test results when the blood is obtained by hospital personnel after a traffic accident for medical purposes, a defendant lacks standing to assert that the State's subpoena duces tecum or grand jury subpoena constitutes an unreasonable search and seizure. *Id.* at \*4-5. The Court of Criminal Appeals, having granted discretionary review, will presumably address the issue of standing, along with the legality of the government's seizure of a defendant's medical records.

Last, because the warrantless blood draw taken on the trooper's orders contributed to the comparative analysis integrated throughout Bonvino's testimony and the State's closing argument, I cannot agree that the error in admitting the warrantless blood draws did not contribute to the conviction.

As for the ineffective assistance of counsel claim, while I disagree with the majority's scenario of plausible trial strategy that could justify counsel's failure to object to the admission of the hospital records in this case, we are bound to recognize the high burden placed on Garcia to provide an adequate record to rebut the presumption that trial counsel's actions were reasonable and not so outrageous that no competent attorney would have engaged in them. Unfortunately, as noted by the majority, trial counsel failed to file a motion for new trial to develop a record on his

ineffective assistance claim.  Given my opinion regarding the majority's harmless error analysis, I refrain from addressing the merits of Garcia's ineffective assistance of counsel claim.

Rebeca C. Martinez, Justice

DO NOT PUBLISH